# 15-1294-cv

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

BANK LEUMI USA,

*Plaintiff-Counter-Defendant-Appellee,*

—against—

DAVID EHRLICH, ANGELA TYKOCKI, ENRIQUE EHRLICH,
SARA GOLDSTEIN,

*Defendants-Counter-Claimants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE

MARK G. HANCHET
JAMES ANCONE
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 506-2500

*Attorneys for Plaintiff-Counter-
Defendant-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Bank Leumi USA ("BLUSA") is a wholly-owned subsidiary of Bank Leumi le-Israel Corporation. Bank Leumi le-Israel Corporation's parent is Bank Leumi le-Israel B.M. Shares of Bank Leumi le-Israel B.M. are publicly traded. No publicly-held company has ownership of 10% or more in Bank Leumi le-Israel B.M.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………...ii

STATEMENT OF ISSUE PRESENTED FOR REVIEW ......................................1

STATEMENT OF THE CASE...............................................................................1

    A.    Statement of Facts .......................................................2

        1.    The Parties.......................................................2

        2.    Defendants opened accounts with BLUSA and purchased $750,000 face value worth of bonds for those accounts............3

    B.    The District Court's Decision ........................................6

SUMMARY OF ARGUMENT ............................................................................10

ARGUMENT .......................................................................................................11

I.    THE DISTRICT COURT CORRECTLY HELD THAT IT HAD PERSONAL JURISDICTION OVER DEFENDANTS UNDER THE INTERNATIONAL ACCOUNT TERMS .................................................11

II.    EVEN IF THE INTERNATIONAL ACCOUNT TERMS DID NOT APPLY, THE DISTRICT COURT STILL WOULD HAVE PERSONAL JURISDICTION OVER DEFENDANTS .............................26

CONCLUSION ...................................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Butvin v. DoubleClick, Inc.*,
　No. 99 Civ. 4027, 2001 WL 228121 (S.D.N.Y. Mar. 7, 2001),
　*aff'd*, 22 F. App'x 57 (2d Cir. 2001)......................................................21

*Chiacchia v. Nat'l Westminster Bank USA*,
　124 A.D.2d 626 (2d Dep't 1986)..............................................12, 20

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill
　Lynch, Pierce, Fenner & Smith Inc.*,
　232 F.3d 153 (2d Cir. 2000) ............................................................15

*Dietrich v. Chem. Bank*,
　115 Misc. 2d 713 (Sup. Ct. N.Y. Cnty. 1981), *aff'd* 92 A.D.2d 786
　(1st Dep't 1983) ...............................................................11, 12, 13

*In re Estate of Ray*,
　24 Misc. 3d 285 (Sur. Ct. Kings Cnty 2009).....................................13

*Hirsch v. Citibank, N.A.*,
　542 F. App'x 35 (2d Cir. Oct. 22, 2013) ...............................16, 18, 19

*Hirsch v. Citibank, N.A.*,
　No. 12 Civ. 1124 (DAB), 2013 WL 1344666 (S.D.N.Y. Mar. 28,
　2013), *vacated*, 542 F. App'x 35 (2d Cir. 2013) .........................16, 17

*Hirsch v. Citibank, N.A.*,
　No. 12 Civ. 1124 (DAB), 2014 WL 2745187 (S.D.N.Y. June 10,
　2014) .................................................................................................19

*Huizar v. Carey*,
　273 F.3d 1220 (9th Cir. 2001) .........................................................22

*Kurz v Chase Manhattan Bank USA, N.A.*,
　319 F. Supp. 2d 457 (S.D.N.Y. 2004) ..............................................22

*Level Export Corp. v. Wolz, Aiken & Co.*,
　305 N.Y. 82 (1953) ...........................................................................20

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 597 F.3d 84 (2d Cir. 2010) ...................................................................22

*Meckel v. Continental Resources Co.*,
 758 F.2d 811 (2d Cir. 1985) ...............................................................22

*Omni Quartz, Ltd. v. CVS Corp.*,
 287 F.3d 61 (2d Cir. 2002) ...................................................................5

*PaineWebber Inc. v. Bybyk*,
 81 F.3d 1193 (2d Cir. 1996) .......................................................12, 20

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de
 Venezuela*,
 991 F.2d 42 (2d Cir. 1993) ..................................................................14

*Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.*,
 No. 28859/10, 2011 WL 4975311 (N.Y. Sup. Ct., Kings Cnty. Oct.
 19, 2011) ........................................................................................14, 20

*Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*,
 No. 03 Civ. 10254 (JFK), 2007 WL 1288592 (S.D.N.Y. May 1,
 2007)
 ......................................................................................11, 12, 19, 20

*Serrano v. Cablevision Sys. Corp.*,
 863 F. Supp. 2d 157 (E.D.N.Y. 2012) ..............................................12

*Silverman v. Mut. Ben. Life Ins. Co.*,
 138 F.3d 98 (2d Cir. 1998) ...........................................................16, 25

## OTHER AUTHORITIES

2d Cir. R. 32.1.1(a) ................................................................................16

iii

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

(1)    Was the District Court (Judge Alison J. Nathan) correct in asserting personal jurisdiction over Defendants?

## STATEMENT OF THE CASE

The District Court ruled that BLUSA is not liable to Defendants for the alleged losses they suffered by investing in certain bonds through their non-discretionary BLUSA accounts.

Defendants do not challenge the District Court's finding that BLUSA is not liable on the merits. Instead, they maintain that even though they signed account applications explicitly referencing a separate document called the "International Account Terms" ("Arrangements"), which contains a consent-to-New York-jurisdiction clause, Defendants actually were bound by a different set of terms and conditions—something called the "International Financial Services Arrangements"—that are not referenced in their account applications. Defendants maintain that, if the International Account Terms do not apply, they cannot have consented to New York jurisdiction and, in turn, the District Court was not entitled to assert personal jurisdiction over them.

The District Court was correct when it rejected Defendants' contention.  The International Account Terms, including its New York consent-to-jurisdiction clause, were incorporated by reference into the account applications as

a matter of law. As the District Court explained, the language in the account applications is unambiguous.

But, even if Defendants were right that the Arrangements apply—they aren't—the District Court's decision still would have to be affirmed because the District Court would have jurisdiction over Defendants under the consent-to-New York-jurisdiction clause found in the Arrangements. And, furthermore, even if there were no consent-to-jurisdiction clause in either the International Account Terms or the Arrangements, the District Court still would have personal jurisdiction over Defendants based on their opening of their New York-based BLUSA accounts and buying and selling of more than $11 million worth of securities over the course of nearly a decade. Thus, there is no question that the District Court had personal jurisdiction over Defendants. The District Court's decision should be affirmed.

### A.    Statement of Facts

### 1.    The Parties

BLUSA is a full-service commercial bank organized under the laws of the State of New York with its head office in New York City. (A 48 ¶ 2.)[1] BLUSA offers U.S. and international private banking services. (A 49 ¶ 3).)

---

[1]    Citations to "(A ___.)" are to the Joint Appendix.

2

David Ehrlich, Angela Tykocki, Enrique Ehrlich, and Sara Goldstein are citizens of Uruguay and reside in Montevideo, Uruguay. (A 40.) Enrique Ehrlich and David Ehrlich own and manage a garment business in Uruguay. (A 170.) Both are involved in investing their families' savings. (A 170.) Enrique Ehrlich has an accounting degree and previously practiced as an accountant. (A 171.)

### 2. Defendants opened accounts with BLUSA and purchased $750,000 face value worth of bonds for those accounts

On September 17, 2002, Defendants applied to open three non-discretionary brokerage accounts with BLUSA. (A 51 ¶ 16, 373 ¶ 7.) Defendants visited one of BLUSA's affiliates, Leumi (Latin America) S.A. ("Leumi Latin America"), at its Montevideo, Uruguay office to complete the account opening documentation. (A 41.) Individuals may visit the Leumi Latin America office to obtain account opening documentation. (A 50 ¶ 11.) At that time and continuing through today, Leumi Latin America does not have the authority to open BLUSA accounts. (A 50 ¶ 12.) Such decisions are made by BLUSA in New York. (A 50.)

As part of the account opening process, Defendants signed three account applications. (A 58, 75, 93.) David Ehrlich and Angela Tykocki signed an account application for the first account; Enrique Ehrlich and Sara Goldstein signed an account application for the second account; and Enrique Ehrlich and David Ehrlich signed an account application for the third account. (A 58, 75, 93.)

3

Each of the account applications contains a section entitled "CUSTOMER AGREEMENT" which provides, among other things, that "[t]he Account Owner confirms receiving a copy of, and agreeing to, the International Account Terms." (A 60, 77, 95.) The International Account Terms is a document of terms and conditions separate from the account application. (A 110-138; *see also* A 53 ¶ 31.) This allows BLUSA to use standard terms applicable to multiple types of accounts with its customers. (A 53 ¶ 31.) The account applications define "Account Owner" as each individual who signs the account application. (A 60, 77, 95.) Each Defendant signed their respective account applications directly below the statement in which they acknowledged receiving and agreeing to the International Account Terms. (A 60, 77, 95.)

On the first page of the International Account Terms, it states that "[t]hese are the 'International Account Terms' referred to in the International Account Application." (A 111.) The International Account Terms contain a New York consent-to-jurisdiction clause pursuant to which Defendants "consent[ed] to personal jurisdiction and venue" in "any state or federal court located in New York County, New York, U.S.A." (A 118.) The International Account Terms and the other account opening documents, including the account applications, constitute the agreement between BLUSA and Defendants with respect to each of Defendants' accounts. (A 111.)

4

Defendants' account applications were sent to New York and BLUSA opened their accounts. (A 52 ¶¶ 23-24.) Defendants' accounts are non-discretionary; that is, BLUSA does not have the discretion to purchase or sell any investment assets, including securities, on behalf of Defendants without Defendants' instructions to do so. (A 373 ¶ 7.) In keeping with this, Defendants acknowledged that they were "sophisticated investors able to evaluate the merits and risks of all investments in the Assets and are able to bear the economic risk of these kinds of investments." (A 128.)

Defendants maintained the accounts for nearly a decade. (SA 22.)[2] During that time, Defendants purchased and sold at least $11 million worth of securities in dozens of transactions in these accounts. (SA 22.) This case arises from one of those transactions.

On February 21, 2008, Defendants Enrique Ehrlich and David Ehrlich signed order forms instructing BLUSA to purchase $750,000 face value worth of bonds issued by Kaupthing Bank for their BLUSA accounts. (A 447, 449.) The order forms that they signed provide as follows:

> I CONFIRM REQUESTING THE BANK TO EXECUTE ON MY BEHALF AT MY SOLE RISK WITHOUT ANY RESPONSIBILITY ON THE BANK'S PART, THE FOLLOWING TRANSACTION FOR THE FINANCIAL ASSETS SELECTED BY ME

---

[2]    Citations to "(SA __.)" are to the Special Appendix.

5

AND WITHOUT THE BANK ADVISING ME IN THIS
MATTER.  THE FINANCIAL ASSETS ARE (1) NOT
A DEPOSIT OR OTHER OBLIGATION OF OR
GUARANTEED BY THE BANK AND (2) SUBJECT
TO INVESTMENT RISKS, INCLUDING POSSIBLE
LOSS OF THE PRINCIPAL AMOUNT INVESTED.

(A 447, 449.) Leumi Latin America transmitted the order forms from Uruguay to BLUSA in New York. (A 54.) That same day, BLUSA executed the trades and BLUSA deposited them into Defendants' accounts in New York. (A 54.)  Some eight months after purchase, Kaupthing Bank defaulted on the bonds. (A 332.)

Years after Kaupthing Bank defaulted, Defendants' Uruguayan counsel sent BLUSA a letter demanding that BLUSA reimburse Defendants the total price of their investment in the bonds plus interest or face legal action.  (A 474-475.)

Thereafter, BLUSA commenced an action in the District Court, seeking a declaratory judgment that it had no liability in connection with Defendants' investment in the bonds. (A 28.) Defendants eventually filed an answer with four counterclaims against BLUSA. (A 235-276.) The parties then completed discovery and filed cross-motions for summary judgment. (SA 6.)

**B.    The District Court's Decision**

On March 23, 2015, the District Court granted BLUSA's motion for summary judgment in its entirety and denied Defendants' cross-motion. (SA 2.)

6

In denying their cross-motion, the District Court rejected Defendants' "novel" argument that the Arrangements—and not the International Account Terms—governed their BLUSA accounts. (SA 9-13.) The District Court concluded that "[t]he contract at issue in this case is wholly unambiguous and, based on the undisputed facts, plainly accords with BLUSA's proposed interpretation." (SA 11.)

In so doing, the District Court observed that the account applications "explicitly" and "unambiguously" referred to the International Account Terms in the following language: "[t]he Account Owner confirms receiving a copy of, and agreeing to, the ***International Account Terms***." (SA 11 (emphasis added).) It also noted that Mr. Donald Bittker, BLUSA's former Deputy General Counsel and the drafter of both the International Account Terms and the Arrangements, testified that the Arrangements would only have applied to those applications that expressly referenced the Arrangements. (SA 12.) Indeed, the District Court further remarked that the Arrangements themselves supported this interpretation by providing as follows: "This booklet is the International Financial Services Arrangements (the 'Arrangement') referred to in the International Account Application." (SA 12 n.5) Moreover, Mr. Bittker testified that the Arrangements did not automatically supplant the International Account Terms. (SA 12.)

The District Court then addressed and found unpersuasive Defendants' argument that the account applications' reference to the "International

7

Account Terms" actually meant the Arrangements. (SA 12-13.) It first explained that, under applicable New York contract law, a court "can only find ambiguity if a term is reasonably susceptible to more than one interpretation *by reference to the contract alone*." (SA 12 (internal quotation marks omitted).) Given this, the District Court reasoned that it could not interpret the "plain term" "International Account Terms" in the account applications by referencing language found in the Arrangements, which was outside the four corners of the account applications. (SA 12.) Describing Defendants' argument as impermissible "bootstrapping," the District Court rejected Defendants' proposed interpretation. (SA 12.)

Yet, for the sake of completeness, the District Court went on to examine the Arrangements but concluded that, even if they somehow were applicable, it would still have personal jurisdiction over Defendants. (SA 13.) As the District Court explained, the consent-to-jurisdiction clause in the Arrangements provides that the account holders consent to "[a]ny legal proceedings or actions arising out of or relating to your Accounts or the Agreement may be brought in, and you consent to personal jurisdiction and venue of, any State or Federal court located in the county where you open the Account, *or, if you open the Account at the offices of a Bank BLUSA affiliate, in the County of New York, State of New York*." (SA 13.) The District Court concluded that there was "no dispute" that Defendants opened their accounts at the offices of a BLUSA affiliate (*i.e.*, Leumi

8

Latin America) and "thus consented to personal jurisdiction and venue in New York." (SA 13.)

For the "sake of absolute clarity," the District Court went on to hold that it still would have been entitled to exercise personal jurisdiction over Defendants regardless of the consent-to-jurisdiction clauses in the International Account Terms and the Arrangements because Defendants had transacted business in New York by opening and then buying and selling over $11 million worth of securities through their New York-based BLUSA accounts over the course of nearly a decade. (SA 21-23.)

Turning to BLUSA's summary judgment motion, the District Court held that "BLUSA cannot be liable to Defendants for their losses associated with the Bonds." (SA 30.) The District Court explained that the agreement governing the parties' relationship and the order forms for the bonds "plainly disclaimed any obligation to advise Defendants regarding their investments and, furthermore, the undisputed facts clearly establish that BLUSA had no duty toward Defendants regarding their independent decision to invest in the Bonds." (SA 30.) In fact, the District Court observed that Defendants' submissions contained "nothing at all explicitly opposing BLUSA's request for summary judgment on its requested declaratory judgment." (SA 30.) Lastly, the District Court dismissed each of Defendants' counterclaims. (SA 31-34.)

9

On March 26, 2015, the Clerk of Court entered final judgment in BLUSA's favor. (SA 35-36.) Defendants thereafter filed this appeal.

## SUMMARY OF ARGUMENT

The District Court correctly asserted personal jurisdiction over Defendants. When Defendants signed their account applications, they agreed to be bound as a matter of law by the International Account Terms, including its consent-to-New York-jurisdiction clause. Well-established New York law and the unambiguous language of the operative documents demonstrate that the District Court was right.

Defendants' sole argument on appeal is that the International Account Terms did not apply to their accounts and, therefore, the District Court did not have personal jurisdiction over them. Defendants are wrong. What is more, Defendants fail to address the two additional and independent bases on which the District Court would have personal jurisdiction over Defendants even if the International Account Terms did not apply to Defendants' accounts (and it most certainly did). First, the District Court found that it would have personal jurisdiction over Defendants pursuant to the consent-to-jurisdiction clause in the Arrangements. Second, the District Court also held that, regardless of the consent-to-jurisdiction clauses, it would have personal jurisdiction because Defendants had

10

transacted business in New York through their opening and nearly decade-long use of their New York-based BLUSA accounts.

Therefore, there is no question that the District Court had jurisdiction over Defendants and, because Defendants do not challenge the District Court's ruling that BLUSA is not liable to Defendants on the merits, this Court should affirm.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT IT HAD PERSONAL JURISDICTION OVER DEFENDANTS UNDER THE INTERNATIONAL ACCOUNT TERMS.

The District Court correctly held that it had personal jurisdiction over Defendants pursuant to the New York consent-to-jurisdiction clause in the International Account Terms, which was incorporated by reference as a matter of law into the account applications that Defendants signed.

Under New York law, it is well-established that "[a] contract can be comprised of separate writings or documents if the writings make it clear that they are to be read in conjunction with other writings to determine the intent of the parties." *Dietrich v. Chem. Bank*, 115 Misc. 2d 713, 715 (Sup. Ct. N.Y. Cnty. 1981), *aff'd* 92 A.D.2d 786 (1st Dep't 1983). "Whether an extrinsic document is deemed to be incorporated by reference is a matter of law." *Sea Trade Co. Ltd. v.*

11

*FleetBoston Fin. Corp.*, No. 03 Civ. 10254 (JFK), 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007).

New York law requires "'that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified *beyond all reasonable doubt*.'" *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (quoting *Chiacchia v. Nat'l Westminster Bank USA*, 124 A.D.2d 626, 628 (2d Dep't 1986)) (emphasis in *Bybyk*). "When a contract clearly identifies a single document, it eliminates all reasonable doubt and thus qualifies as an effective incorporation." *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 165 (E.D.N.Y. 2012).

Applying these principles, New York courts have held for decades that where, as here, account holders sign account opening documents that refer to a separate but specific document of terms and condition those terms and conditions are incorporated by reference into the agreement between the financial institution and the account holder as a matter of law.

In *Dietrich v. Chemical Bank*, for example, separate terms and conditions governing certain bank fees were incorporated by reference into an agreement governing a checking account. 115 Misc. 2d at 714-715. Although the account holder, like Defendants here, alleged that she had not received the separate terms and conditions, *id*. at 715, the court held that these provisions were part of

12

the agreement because the account holder had executed a signature card when she opened her account that provided directly above her signature—similar to the acknowledgement in the account applications above Defendants' signatures here— as follows: "I acknowledge receipt of a copy of the Rules and Regulations applicable to this checking/savings account and agree to be bound by these Rules and Regulations." *Id*. at 714.

Similarly, in *In re Estate of Ray*, 24 Misc. 3d 285 (Sur. Ct. Kings Cnty 2009), the court found that a provision requiring account holders to inform the bank of suspected forgery within 60 days of the mailing of statements governed a deposit account even though the provision was found in a separate document of terms and conditions. *Id.* at 288-290. The court explained that the terms and conditions were incorporated into the deposit agreement based on a specific reference to that document in the signature card that the account holders signed: "The Depositor has received and agrees to the *Terms and Conditions for Business Accounts* and the Business Card Agreement currently in effect…." *Id*. at 289-290 (emphasis added). Based on this unambiguous language, the court stated that the account holders acknowledged receiving and being bound by the separate terms and conditions. *Id*. Accordingly, the court rejected the account holders' argument, which is identical to Defendants' argument here, that they did not receive a copy of the terms and conditions when they opened the account. *Id*.

13

A similar result followed in *Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.*, No. 28859/10, 2011 WL 4975311 (N.Y. Sup. Ct., Kings Cnty. Oct. 19, 2011). There, the court held that a contractual statute of limitations found in a separate document of terms and conditions applied to a deposit account. *Id*. at *7. The court based this conclusion on the fact that the account holders signed signature cards in which the account holders certified that they "had received and agree[d] to the Terms and Conditions for Business Accounts and the Business Banking Card Agreement, currently in effect and as may be amended for the type of account and services it has selected." *Id.* at *4, *7. Given this specific reference to a specific document, the court squarely rejected plaintiff's argument that the Account Agreement was not incorporated by reference into the signature card. *Id.* at *7.

And this Court applied the incorporation-by-reference doctrine in holding that an insurance policy incorporated a reinsurance agreement because the policy contained a "specific reference to a single document directly identified by name." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 47 n.8 (2d Cir. 1993). In that case, the policy stated that it was "[s]ubject to Facultative Reinsurance Agreement," and this Court found the use of capitalized letters significant because it indicated that a "specific document" was being referenced. *Id.*

14

Here, the account applications that Defendants signed identified a specific document (*i.e.*, the "International Account Terms") beyond all reasonable doubt. First, and most importantly, the account applications contain the following dispositive and unambiguous language: "[t]he Account Owner confirms receiving a copy of, and agreeing to, ***the International Account Terms***." (A 60, 77, 95 (emphasis added).) The reference to the "International Account Terms"—which is directly above where Defendants signed the documents—is specific. It refers to one document. Moreover, the International Account Terms themselves are titled just that on the front cover: "International Account Terms". (A 110.) And, as the District Court explained, in the first sentence of that document it states that "[t]hese are the 'International Account Terms' referred to in the International Account Application." (SA 10.) Furthermore, the International Account Terms state that they together with the account application, the International Fee Schedule, and the Funds Availability Disclosure, constitute the "agreement" that governs Defendants' accounts. (SA 10.) There is nothing in the account application that refers to the Arrangements.

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous," *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000), and whether the language of a contract is

15

unambiguous is a "question of law for the court." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002). Here, the District Court properly concluded that "the contract at issue in this case is wholly unambiguous and, based on the undisputed facts, plainly accords with BLUSA's proposed interpretation." (SA 11.) This Court should therefore affirm.

*    *    *

Defendants' entire appeal turns on the following interpretation: that the account applications' reference to "International Account Terms" actually meant "International Financial Services Arrangements" when Defendants opened their BLUSA accounts. None of Defendants' arguments in support of this unreasonable interpretation has merit.

Defendants rely mightily on *Hirsch v. Citibank, N.A.*, 542 F. App'x 35 (2d Cir. Oct. 22, 2013),[3] but they did not cite this case or argue for its application to this case during any of the proceedings before the District Court. Defendants have therefore waived this argument on appeal. *Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 103 (2d Cir. 1998).

In any event, Defendants mischaracterize *Hirsch*'s holding. In that case, a bank moved to compel arbitration pursuant to an arbitration clause found in

---

[3] *Hirsch* is a summary order and, therefore, does not have precedential effect. *See* Local Rule 32.1.1(a).

16

a separate "Client Manual," which the bank argued was incorporated by reference into signature cards the account holders signed. *Hirsch v. Citibank, N.A.*, No. 12 Civ. 1124 (DAB), 2013 WL 1344666, at *1 (S.D.N.Y. Mar. 28, 2013), *vacated*, 542 F. App'x 35 (2d Cir. 2013). In those cards, the account holders had acknowledged that they were "bound by any agreement governing any account opened in the title indicated on this card." *Id*. at *4. The account holders claimed, however, that the bank did not provide them with the Client Manual when they opened their accounts. *Id.* at *3. In response, the bank argued that it had a corporate policy of providing new customers with the Client Manual when accounts were opened. *Id*. at *4.

On this record, the district court held that the signature cards' "vague reference" to "any agreement" did not identify the Client Manuel beyond a reasonable doubt. *Id*. at *5. Significantly, the district court then stated that it "need not determine whether Citibank provided the Client Manual" to the account holders in light of this holding. *Id*. at *4. In other words, unlike the District Court here, the *Hirsch* district court concluded that the Client Manual was not incorporated by reference as a matter of law. The court then failed to consider the bank's ***alternative*** argument: that the arbitration clause applied because of the bank's corporate policy of providing new customers with a Client Manual at signing.

17

On appeal, the bank argued that this was error. *Hirsch*, 542 F. App'x at 36. This Court agreed, holding that "the district court erred in concluding that the Signature Cards did not sufficiently incorporate by reference the Client Manual without deciding whether Citibank provided [the account holders] with the Client Manuals when they opened their accounts." *Id.* Accordingly, this Court remanded the case and instructed the district court to decide, first, whether the bank had, in fact, provided the account holders with the Client Manual and, second, whether it had demonstrated a corporate policy requiring the provision of the Client Manual. *Id.*

Defendants seize on this Court's instructions for remand and misleadingly argue that the incorporation-by-reference doctrine required the District Court in this case to consider this type of evidence even though the account applications' reference to the "International Account Terms" was specific and unambiguous. Br. 39-40.[4] But, as demonstrated above, that is not the holding of *Hirsch*. In fact, this Court *never* reached the district court's threshold finding that the Client Manual was not incorporated by reference into the signature cards as a matter of law, which is the only issue in this appeal.

Defendants' reading of *Hirsch* conflicts with well-settled New York law, which provides that a court faced with this issue must first determine whether

---

[4] Citations to ("Br __.") are to Defendants' opening brief.

18

the language of the contract is unambiguous by reference to the four corners of the agreement. *See, e.g.*, *Sea Trade*, 2007 WL 1288592, at *4 ("Whether an extrinsic document is deemed to be incorporated by reference is a matter of law."). In fact, Defendants agree with this proposition. Br. 47. Only if this language is ambiguous will a court then resort to alternative arguments, such as whether a bank had policies in place to provide customers such forms and whether the bank followed those policies and procedures. *See, e.g.*, *Hirsch v. Citibank, N.A.*, No. 12 Civ. 1124 (DAB), 2014 WL 2745187, at *11-*18 (S.D.N.Y. June 10, 2014) (addressing bank's alternative arguments on remand).

*Hirsch* is also readily distinguishable on its facts. As this Court explained, the signature cards at issue there contained a broadly-worded reference that the account holders agreed to be bound by "any agreement governing" their accounts. *Hirsch*, 542 F. App'x at 37. Here, the account applications unambiguously refer to a single and specific document (*i.e.*, the International Account Terms). In addition, this Court noted that the Client Manual did not state that it was an agreement or that it contained terms and conditions governing the accounts at issue. *Id.* Again, the undisputed facts here are different: the International Account Terms state on the first page that they form part of the "Agreement" governing Defendants' accounts. (A 111.)

19

*Chiacchia v. National Westminster Bank USA*, 124 A.D.2d 626 (2d Dep't 1986), also offers Defendants no support. Br. 40. The court in that case held that an agreement did not incorporate as a matter of law a separate document entitled "Rules for Your Safe Deposit Box Services" because it merely stated that the account holder "agree[d] to the rules and regulations of the Bank in force at this date." *Id.* at 627. The only other case Defendants cite—*Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.*, No. 28859/10, 2011 WL 4975311 (N.Y. Sup. Ct., Kings Cnty. Oct. 19, 2011)—actually *supports* affirmance, as explained above. *Supra* at 14.

Defendants' allegations that they had "not even heard of" and "were not provided" the International Account Terms when they opened their accounts are legally irrelevant. Br. 40-41. Even assuming this were true, Defendants would still be bound by the International Account Terms because, as the District Court ruled, they were incorporated by reference into the account applications as a matter of law. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) ("[A] party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms[.]") (citing *Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87 (1953)); *Sea Trade*, 2007 WL 1288592, at *4 ("[I]f the Terms and Conditions were incorporated by reference in the Signature Card, then Nani would be bound by the Bank's Terms and Conditions as a matter of law, regardless of

20

whether Nani's principles had actually received or were aware of the Terms and Conditions' contents."); *Butvin v. DoubleClick, Inc.*, No. 99 Civ. 4027, 2001 WL 228121, at *5 (S.D.N.Y. Mar. 7, 2001) ("The law simply does not protect someone who willingly signs an agreement which references and incorporates other controlling documents which he or she has not seen."), *aff'd*, 22 F. App'x 57 (2d Cir. 2001).

Defendants complain that the District Court "disregarded" their purported evidence of Leumi Latin America's corporate policy relating to the provision of supplemental forms. Br. 41-45. But this purported evidence also is legally irrelevant. And in any event, Defendants each acknowledged receipt of the International Account Terms when they signed the account applications. (A 60, 77, 95.) The District Court found this contemporaneous evidence more persuasive than Defendants' self-serving affidavits. (SA 15.)

Defendants' argument that BLUSA is not entitled to a presumption that Defendants, in fact, received the International Account Terms also is legally irrelevant. Br. 42-45. Again, the District Court held that the International Account Terms were incorporated into the account applications and, thus, governed Defendants' account *as a matter of law*. (SA 11.) The District Court did not reach the issue of whether BLUSA was entitled to a "presumption of receipt" because, as an initial matter, Defendants never raised this argument below (and therefore they

21

waived it) and, second, the District Court did not have to reach it under controlling New York law.

To support their "presumption of receipt" argument, Defendants rely on the inapposite cases of *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 597 F.3d 84 (2d Cir. 2010), *Huizar v. Carey*, 273 F.3d 1220 (9th Cir. 2001), *Meckel v. Continental Resources Co.*, 758 F.2d 811 (2d Cir. 1985), and *Kurz v Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457 (S.D.N.Y. 2004). Br. 42, 44. But these cases have nothing to do with the incorporation-by-reference doctrine and, in fact, *Huizar* and *Kurz* did not even apply New York law.

In any event, Defendants' unsupported assertion that Leumi Latin America did not comply with its policy of providing account holders with the International Account Terms during the account opening process is simply wrong. Br. 38. Mr. Uriel Ganz testified that he "offers the client the possibility of having [the International Account Terms] and, generally speaking, the client doesn't want them." (SA 16.) Defendants similarly misconstrued Mr. Ganz's testimony in their unsuccessful summary judgment motion, as the District Court noted below. (SA 16.)

Defendants next fault the District Court for supposedly not examining the "supplemental booklets," including the Arrangements, to determine whether the term "International Account Terms" in the account applications was

22

unambiguous. Br. 47-48, 50. Defendants are wrong. The District Court reviewed *both* the account applications *and* the International Account Terms and properly found that later set of terms was incorporated beyond a reasonable doubt. (SA 10-12.) It then considered the language in the Arrangements on which Defendants relied, even though the Arrangements represent a separate document outside the four corners of the applicable contract, but it still rejected Defendants' competing interpretation. (SA 12-13.)

Defendants next argue that the account applications' reference to "International Account Terms" meant "International Financial Services Arrangements" because the latter set of terms "automatically (and retroactively) supplanted" the terms of the former document. Br. 48. Defendants raised this argument below and the District Court properly rejected it. (SA 10-13.) As the undisputed record demonstrates, the Arrangements did *not* automatically replace the International Account Terms either generally or with respect to Defendants' accounts. (A 512-513.) Mr. Bittker, who drafted the supplemental forms, testified that the Arrangements would become part of the operative account agreement if the account application expressly referred to the "International Financial Services Arrangements":

> A.    I can tell you that this document [*i.e.*, the Arrangements] was intended for newly opened accounts, which were referenced in the international account application…. For customers which opened their account

23

using a revised account application, revised in the sense that it referred to the International Financial Services Arrangements, the arrangements would be effective obviously upon the signing of that application by the customer or, more specifically, the opening of the account by BLUSA pursuant to that signed application….

Q.    When would that effectiveness have occurred the first time these terms applied to an account application?

A.    If someone signed an account application that had in there a reference not to the [I]nternational [A]ccount [T]erms, but a reference to the International Financial Services Arrangements, the [A]rrangements would become effective upon the applicant's submission of the application to BLUSA and BLUSA's opening the account pursuant to that signed application.

(A 512-513 (D. Bittker Tr. at 26:18-28:15).)

This is confirmed on the first page of the Arrangements, which states that "[t]his booklet is the International Financial Services Arrangements (the 'Arrangements') *referred to in the International Account Application*…." (A. 279 (emphasis added).) But the account applications that Defendants' signed, of course, referred to the International Account Terms, not the Arrangements. (A 60, 77, 95.) What is more, Mr. Bittker testified that the revised version of the account applications that referenced the Arrangement were first printed in December 2002 *after* Defendants had already signed their account applications in September 2002. (A. 514 (D. Bittker Tr. at 29:8-29:24).) Further, Mr. Bittker confirmed that there are still BLUSA accounts, like Defendants', that remain governed by the

24

International Account Terms even though there are other accounts governed by the Arrangements. (A. 513 (D. Bittker Tr. at 28:1-8.)) Defendants never rebutted this testimony.

Defendants rely on a standard merger clause found in § 1.32 of the Arrangements, (A. 287), to incorrectly argue that, based on this provision, the Arrangements automatically "supplanted" the International Account Terms. Br. 17-18. But this gets it exactly backwards. As Mr. Bittker testified and as the undisputed record shows, the Arrangements would only become effective for a particular account if the applicant signed an account application that referred to that document. (A 512-513 (D. Bittker Tr. at 26:18-27:15).) Defendants did no such thing. They signed account opening documentation that referenced the International Account Terms; the Arrangements were never part of Defendants' agreement with BLUSA and § 1.32 did not "supplant" anything.

In addition, Defendants' reliance on the "Changing Terms and Conditions" provision fails. Br. 19. As an initial matter, Defendants did not raise this argument before the District Court and it is therefore waived on this appeal. *Silverman*, 138 F.3d at 103. But, in any event, there is no evidence in the record that BLUSA ever mailed Defendants a notice that it was changing the terms of the International Account Terms that governed their accounts, as required by this provision. (A 423.)

25

Finally, Defendants request, in the event this Court reverses and remands, that the District Court construe any contractual ambiguities against BLUSA under the doctrine of *contra proferentem*. Br. 53-54. But this is not a basis for reversal. And, as with so many of their contentions on appeal, Defendants did not raise this before the District Court and therefore they waived this argument. But, more importantly, there are no contractual ambiguities: the District Court found the language of the account applications to be "wholly unambiguous" and that conclusion was correct. (SA 11.)

## II. EVEN IF THE INTERNATIONAL ACCOUNT TERMS DID NOT APPLY, THE DISTRICT COURT STILL WOULD HAVE PERSONAL JURISDICTION OVER DEFENDANTS.

Even if the International Account Terms did not apply to Defendants' accounts (it did), affirmance still would be required for two separate and independent reasons.

*First*, the District Court found that it would have personal jurisdiction over Defendants pursuant to the consent-to-jurisdiction clause in the Arrangements. The District Court analyzed this provision and concluded that Defendants "consented to personal jurisdiction and venue in New York." (SA 13.) *Second*, the District Court also held "for the sake of absolute clarity" that it had personal jurisdiction regardless of the consent-to-jurisdiction clauses because Defendants had transacted business in New York through their opening and buying

26

and selling of over $11 million worth of securities through their New York-based BLUSA accounts over nearly a decade. (SA 22-23.)

There is no question that the District Court had personal jurisdiction over Defendants. In addition, Defendants have not challenged the District Court's grant of summary judgment to BLUSA on the merits. This Court should therefore affirm.

## CONCLUSION

For the foregoing reasons, the District Court's decision should be affirmed.

Dated: September 30, 2015

Respectfully submitted,

*/s/ Mark G. Hanchet*
Mark G. Hanchet, Esq.
James Ancone, Esq.
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506-2500
Fax: (212) 262-1910
mhanchet@mayerbrown.com
jancone@mayerbrown.com

*Counsel for Plaintiff-Appellee Bank Leumi USA*

27

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,737 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Dated:  September 30, 2015

*/s/ James Ancone*
Mark G. Hanchet, Esq.
James Ancone, Esq.
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York  10020
Tel:  (212) 506-2500
Fax:  (212) 262-1910
mhanchet@mayerbrown.com
jancone@mayerbrown.com

*Counsel for Plaintiff-Counter-*
*Defendant-Appellee Bank Leumi USA*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of September, 2015, I caused BLUSA's brief to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jose Raul Alcantar Villagran, Esq.
ALCANTAR LAW PLLC
22 Cortlandt Street, 16th Floor
New York, NY 10007
(212) 658-0222

*Counsel for Defendants-Counter Plaintiffs-Appellants*

I further certify that on this 30th day of September, 2015, I caused the required number of bound copies of BLUSA's brief to be filed with the Clerk of the Court.

*/s/ James Ancone*

*Counsel for Plaintiff-Counter Defendant-Appellee*